### HENRY v. CINCINNATI.

1. STREETS AND THEIR USES DEFINED.

A street, in contemplation of law, does not consist simply of that part of the surface used for travel, but includes as much of the space above and that which underlies as is requisite and necessary for all proper street and municipal uses that are known to the period in which the street is occupied and used, within whatever height or depth that is necessary for the purposes of proper construction.

2. GENERAL POWER OF MUNICIPALITY TO REGULATE STREETS.

It is within the power of a municipal corporation to regulate the use of its streets and prescribe the mode and manner of such use, with a view to such regulations as are necessary for the safety and proper consideration of the general interests and rights that belong to citizenship in a community.

3. ABUTTING OWNER'S RIGHT TO USE SPACE ABOVE AND BELOW SURFACE OF STREETS.

An abutting owner may use the street and the space above and below the surface in any manner permissible by the city ordinances, so far as the mode of use is concerned, where such use contravenes no right of the city to its actual occupation and use for street and municipal purposes.

4. SECTION 3471a REV. STAT., REGULATING ELECTRIC WIRES IN STREETS, PROSPECTIVE.

Sec. 3471a Rev. Stat., prohibiting the placing, constructing and maintaining of wires through a street for conducting electricity for lighting purposes, without the consent of the municipality, has a prospective operation on acts accomplished before its passage.

5. SECTION 3471a REV. STAT. PROHIBITS STRINGING OF ELECTRIC WIRES THROUGH STREET, BUT NOT "ACROSS" STREET.

The stringing of electric wires "across" a street at the height of eighty feet above the surface, is not a violation of Sec. 3471a Rev. Stat., prohibiting the placing and constructing of such wires "through" a street without the consent of the city.

6. MUNICIPALITY ENJOINED FROM REMOVING ELECTRIC WIRES ABOVE STREET SURFACE, WHEN.

A municipal corporation has no authority, by virtue of its general control over streets, to remove wires stretched across a street, at a height of eighty feet above the surface, from a private electric plant on abutting property to the property of another abutting owner, for the purpose of conveying electricity for lighting purposes, such wires not interfering with any street or municipal purpose, where the arrangement for the use of the electricity and its conveyance for the use of others are in conformity with the requirements of the city ordinance, although the consent of the city has not been granted; and their removal by the city will be enjoined.

Coffey, Mallon, Mills & Vordenberg, for plaintiff.

Theodore Horstman, corporation counsel, for defendant.

SIBLEY, J.

The action below is a case in chancery, seeking relief in injunction.

Henry v. Cincinnati.

It seems that the plaintiff, trustee, is the owner of certain real estate in this city, in one block, and in connection with her business thereon has made some sort of small electric plant, to be used for her own purposes, and has proceeded to extend the use of it to some of the neighbors within the block who wanted the benefit of the light, which she could furnish. That is one aspect of the case. Across the street from the plaintiff is another neighbor who wanted some benefit of this light, and so all arrangements were made. Wires at the height of eighty feet were stretched across the street—from house-top to house-top, about eighty feet above the street. The main body of the evidence is practically one of an agreed statement of facts; that the plaintiff is the owner; that these arrangements have been made; the wires are suspended for use, with a view to use, and that she is an abutter upon this street; that the arrangements for the use of this electricity, or the conducting of it for use to others, are in perfect conformity with the requirements of the ordinances of this city, regulating the use of the electrical power for lighting, furnished under the general authority of the state by others.

The sole contention on which the case is made to turn, is, that no right to do this has ever been granted by the ordinance of council. It is agreed the regulation of the use by plaintiffs are rather in harmony with the requirements of the city in that regard, and it at last resolves itself into the question whether they can make this use in the two features specified without the permission of the council. That resolves itself finally into what is the property right of a citizen under such circumstances in a city like this.

Plaintiffs don't dispute the proposition made on behalf of the city that it is within the power to regulate the use, prescribe the mode and manner, with a view to such regulations as are necessary for safety and for the proper consideration of the general interests and rights that belong to citizenship in a municipality. One point of contention was that council has not authorized this, refuses to authorize it, and now threatens to cut down and tear away these wires. The lots are described as lots on that avenue, and we take it from the evidence, enough is shown to make it apparent that they are parts of a piece of land formerly abutting upon the old road, and therefore abutters on the street, and they are the owners of the fee to the center of it. The mere fact that a man sells a lot here, perhaps by metes and bounds as to the line of a street, would not necessarily accomplish that result, so far as the title is concerned. A case is cited in Lough v. Machlin, 40 Ohio St. 332, on that point. That, however, was where a party undertook to make a dedication, lay out an addition and make a dedication of streets, and it never was ac-

cepted, and the court held that the dedicators did not in effect describe the lot, as bounded by an alley, but by the east line. The rule in the construction of deeds making a stream or a road or a way the boundary does not apply. That was a case where they sought to estop the dedicator, and it does not militate against the general effect of the evidence here, that this plaintiff may be regarded as the abutting owner, holding, at least so far as the city is concerned, the fee of this land which has been dedicated to a public use of this nature.

Prior to going into the two points that I wish to state shortly, a statute passed in 1896 is cited with reference to such cases, and some one interested procured an amendment to Sec. 3471 Rev. Stat., designated Sec. 3471a Rev. Stat., which provides, that in order to subject the crossing of lots and alleys by persons in the way that is set out in this petition, through their own private arrangements to subject the same to municipal control, no person or company shall place, string, construct and maintain any line, wire, fixture or appliance of any kind for conducting electricity for lighting, heating or power purposes, through any street, alley, lane, square, place or land of any city, village or town, without the consent of such municipality, and this inhibition shall extend to all levels, above and below the levels of such public way, as well as along the surface thereof.

Now, it may be said, in the first place, that this does not take it "through" a street. If I go "through" a street that is one thing. If I cut across the street that is another. This says through a street, and it does not say across, but be that as it may, manifestly from the language of the proviso, it has a prospective effect on this act which has already been done, and which the city seeks to strike down, in view of the authority claimed to be vested in it. Furthermore, there is a penalty attached. It is made a criminal act, but I don't see that that aids the city any. If that is a valid statute against the property owners' right, and the maintenance of those wires violates it, the party becomes subject to the penalty.

All that is involved here is whether or not the city is authorized in virtue of its general municipal authority over streets, and as against the property right of an abutter upon a street, to tear the wire down. It is a case not free from difficulty perhaps, but we have considered it pretty fully, and this court is rather inclined to be with the property owner than with the city on this point.

What is a street to begin with? That is the first proposition to be determined. The city has plenary power to control its streets, in the exercise of a proper discretion, as to what is needed for the general welfare of the city, and of those who shall use the streets. That authority is unquestionably conferred by statute, but it leaves open the question,

what is a street. Is space ten thousand feet above any part of the street? If it is, the city can regulate the flying of balloons ten thousand feet above the street, if they cross the street, or make it a penal offense to fly a balloon along a street in this ctiy, at the height of ten thousand feet above it. Can the city prevent the owner of the fee from penetrating the soil from his lot, a depth of a hundred feet out under the street? Is that any part of the street? If the city were invested with the fee for street purposes, would that be any part of the street? The street is what the city has control of. It has not the control above the street, except under limitation. Now, I don't mean to imply that the mere naked surface is the street, or that the depth under it, to which a pavement may be laid alone, is the street, or that ten feet deep is no part of the street for purposes of control. The proposition we lay down and conceive to be law is this: The surface, with as much of what underlies it, as is requisite for all the street uses, that are known to the period in which the street is occupied and used, not merely for travel upon it, but for sewerage purposes—nowdays for gas pipes and water pipes, and all things of that sort, within whatever depth is necessary for the purposes of the proper construction; and if the city were to see fit to tunnel, for the purpose of a tramway as is done in some parts of London, to the extent requisite for that, if it arose out of the necessities of travel, and subject to the right of use of this kind, to the extent necessary for the full and complete and safe enjoyment of the streets, in the modes in which it may be used, the city has, I say, a complete and plenary power over them, for the purposes of control, and beyond that it has nothing. So if I go up a thousand feet above the streets of this city, I don't regard myself, although I may sustain myself by balloon or otherwise above the street, as being in it, and if I am the owner of an adjoining lot and see fit to dig a hole that will go down a hundred feet right under the street, at the end of it, and I go down there and occupy for proper purposes, in such a way that in nowise injures the street, I am not in the street; I am under the street in the one case, and I am above it in the other.

Now a court don't draw fine lines upon this proposition as to the height or depth perhaps, and when the present case is cited it becomes apparent that a hundred feet below the surface is no part of the street, except as a right of support to it, and a thousand feet above the street is no part of the street, because it is too far for any practical regulation or control of the street; but fifty feet above, it may be. In modern buildings one hundred feet may be—two hundred, three hundred, for I believe erections of that height are found in some of the great cities of the country, and if we were to get a style of building that would carry us into the

Eiffel Tower line of construction, we might go a thousand feet above, and the city have certain purposes of regulative control. Now the city says in effect, by its contention here, that when a private owner uses the street for the purposes of a wire to cross it, in order to convey electrical fluid which he is to generate, and passes it across the street to an adjoining owner, in conformity with the city regulations in regard to the management of that form of business in the city, which the petition shows is conducted here, and conducted largely and widely—this is not the introduction of a new use by the private owner, but it is a common use, which he seeks to exercise, b. crossing at that height, precisely as the city provides in its ordinances may be done by others, so that if the private owner has the right to' use, there is no contention that he has not conformed with the regulations for the use, or the mode in which the city has prescribed.

I don't find anything, any authorities, except general propositions that are in the books, that aside from what is necessary to the city's use of the streets, not only for actual occupancy, but for regulative control, indicating the private owner has no rights; he may dig his hole underneath the street, and as we think he may make his use above it if he sees fit until you reach the line of the limit of use, or if it is still within the city's control as to the mode of use.

But the city seeks to have a right to monopolize this use, to absolutely deny it to the private owner. That is the real point in contention. Now, what we think is, that the private owner may use the street in any way that is permissible by the ordinances of the city, so far as the mode of the use is concerned, where i' is utterly impossible that it shall contravene any right of the city in its actual occupation and use. Now, that is the case here, and there is not anything in the authorities that perhaps exactly touch it. Only on general principles we have resolved it. We place it upon the ground that the property owner has a right to use it in any way that does not contravene the city's use, and that conforms with its regulative control as to the mode of use. Upon that point there is no dispute between us. It is not worth while to prolong the discussion. It is not worth while for us to go into hair splitting distinctions on the authorities in the books. It is not our habit when we find a case resting upon a clear basis of principle and general doctrine, to spend time in undertaking to say that this case resolves this precise point, and that one that. We don't regard it as our purpose to try and enlighten counsel in regard to the specific effect of our decisions, in order to make a general

exegesis of all the cases that might in some remote way touch the matter. We think the decree of the court below substantially gives the relief to which the plaintiff is entitled, and that decree may be entered in this court,